# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Gita Green, Inc.,

    Plaintiff,

v.

WePe Industry, LLC,

    Defendant.

Case No.: 2:14-cv-715-JAD-GWF

**Order Denying Emergency Motion for Preliminary Injunction [Doc. 6] and Granting in Part Motion to Disregard Certain Reply Materials or, in the Alternative, for Leave to File a Sur-Reply [Doc. 32]**

    This is a patent-infringement case in which Gita Green, Inc. contends that WePe Industry, Inc. is infringing on its Air Filter Blaster patent no. 8,668,782 B2 (the "782 Patent") by manufacturing the WePe Air Filter Cleaner.[1]  Gita Green moves for a preliminary injunction[2] enjoining WePe from "making, using, selling, offering to sell, or importing" the allegedly infringing product.[3]  Having considered all of the parties' submissions[4] and their presentations at the September 3, 2014, oral argument on this motion, I find that defendant WePe has raised substantial issues of invalidity and that plaintiff has not provided me with enough evidence to perform even a tentative

---

[1] Although plaintiff refers to the WePe product as the "Diesel Air Filter Cleaner," WePe calls it "the Air Filter Cleaner," *see, e.g.,* Doc. 16-2 at 3, and so do I.

[2] Although plaintiff styled the motion as an "emergency" one, the parties stipulated to continue the earlier-scheduled hearing.  *See* Doc. 29.

[3] Doc. 1; Doc. 6 at 17.

[4] WePe filed a Motion to Disregard Certain Reply Materials or, in the Alternative, for Leave to File a Sur-reply, arguing that Plaintiff raised new arguments in its reply and the court should either disregard them or consider WePe's response.  Doc. 32.  Gita Green's arguments on reply deviated significantly from those in its original motion: the alleged infringement was completely glossed over in the motion, and Gita Green acknowledged it had only "preliminary and limited" evidence and argument of infringement.  Doc. 6 at 11 n.2.  This footnote suggests that even plaintiff recognized at the time it filed its motion that the infringement theory was weak and undeveloped.  In its reply brief, plaintiff first offered the theory that the claim involves the "member," which is a straight and rigid pipe.  Doc. 25 at 9.  The belated identification of this central argument necessitated additional briefing from WePe.  I grant WePe's motion in part: I consider the merits arguments in its motion as its surreply, and I have also considered Gita Green's response to that brief and WePe's subsequent reply.  Docs. 36, 37.

claim construction. These deficiencies prevent me from concluding at this time that Gita Green is likely to succeed on the merits of its claim, and I deny the preliminary injunction motion. Doc. 6.

**Facts**

Gita Green, Inc. is the assignee and owner of the 782 Patent, entitled "Apparatus and Method for Cleaning Air Filters," issued on March 11, 2014. Doc. 1-1; 25-1 at 10.[5] Plaintiff contends that the "Air Filter Blaster," invented by Gita Green's President Dennis Grieve, is the commercial embodiment of the 782 Patent, and that Salmon River Innovations, Inc. is the manufacturer of this product and has the exclusive right to sell it in the United States. Doc. 6-1 at 3. Grieve attests that he first came up with the idea for the Air Filter Blaster as a construction foreman in 2007. *Id.* "After years of trial and error revising the design and fabricating the apparatus," he had a functioning model in May 2011 and Salmon River started manufacturing it in September 2011. *Id.* at 4. The USPTO issued the 782 Patent on March 11, 2014. Doc. 6-1 at 9.

Shawn Peterson, President and owner of WePe Industry, LLC, has his own air-filter-cleaning-apparatus invention story. He attests that he spent two years developing the WePe Air Filter Cleaner before bringing it to market in August 2012. Doc. 16-2 at ¶ 2, 23. Peterson himself has two patent applications related to the Air Filter Cleaner pending; the first was filed on August 3, 2012. *Id.* at ¶ 23.

In its approximately three-page complaint, Gita Green alleges that WePe's product has infringed at least claims 2, 3, 18, and 23 of the 782 Patent. Doc. 1 at 2.[6] In its emergency motion for preliminary injunction, Gita Green summarily argues that the infringement relates to claims 1, 2, and 18 of the patent, Doc. 6 at 10, and in its reply, Gita Green distilled its infringement arguments down to one theory: the Air Filter Cleaner infringes because it has "a member having a hollow interior communicating a pressurized fluid flow and defining a longitudinal axis of said apparatus," an

---

[5] Although the patent was assigned to Gita Green, LLC, *see* Doc. 1-1 at 2, that entity was converted to a corporation. Doc. 25-1 at 1.

[6] Only claim 1 is independent and "dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed." *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989). The parties do not dispute that claims 2 and 18 are dependent claims that relate back to claim 1.

essential element of the patented apparatus. Doc. 25 at 9; Doc. 1-1 at 9, column 4. By the time of oral argument, the theory was even more narrow: the infringement occurs because WePe's product uses a rigid pipe, which defines the apparatus's longitudinal axis, though the length of WePe's pipe differs from that on Gita Green's product. Gita Green argues that "claim 1 requires that the relevant member actually define the longitudinal axis of the claimed apparatus," and a "flexible" or hose-like "member with no static axis line simply cannot" do that. Doc. 36 at 6.

WePe characterizes Gita Green's most recent iteration of its shifting infringement theory as "a grasping attempt to save the validity of claim 1 by pretending that the claim requires a relatively 'long' and 'rigid' member to define the longitudinal axis of the apparatus" because "[t]here are no such 'long' and 'rigid' restrictions . . . in the actual claim language." Doc. 37 at 5. WePe further points out that Gita Green's "own patent specification directly contradicts its argument" because it "contemplates that a flexible member, such as a hose, can serve as" the member. *Id*. at 4.

**Discussion**

The Patent and Trademark Act authorizes courts to issue injunctions to prevent infringement during the pendency of a determination on the merits.[7] A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[8] A court may only grant a preliminary injunction upon a showing that: (1) the petitioner is likely to succeed on the merits of his complaint; (2) irreparable harm will result in the absence of an injunction; (3) the balance of equities favors an injunction; and (4) an injunction is in the public's interest.[9]

---

[7] 35 U.S.C. § 283. Notably, "The grant, denial, or modification of a preliminary injunction . . . is not unique to patent law, so this court applies the law of the regional circuit when reviewing and interpreting such a decision." *Aevoe Corp. v. AE Tech Co.*, 727 F.3d 1375, 1381 (Fed. Cir. 2013).

[8] *Winters v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*, 473 F.3d 1196, 1200 (Fed. Cir. 2007).

[9] *Winters*, 555 U.S. at 22 (citations omitted); *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1050 (9th Cir. 2010). Under Federal Rule of Civil Procedure 65(d), "Every order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." *Id.*

### A. Establishing a Likelihood of Success on a Patent-Infringement Claim

To establish a likelihood of success on the merits of a patent-infringement claim, a plaintiff must demonstrate that it can "more likely than not" establish the presence of infringement.[10] If the party opposing the injunction raises "a substantial question concerning infringement or invalidity [of the patent], meaning that it asserts a defense that [plaintiff] cannot prove lacks substantial merit," then a plaintiff is not likely to succeed on the merits of its patent infringement claim, and a preliminary injunction should not issue.[11] Both infringement claims and invalidity-by-anticipation defenses require the court to perform a two-part inquiry to assess the plaintiff's likelihood of success on the merits. The first step of each is to "determin[e] the meaning and scope of the patent claims."[12] I turn first to the invalidity analysis and use that analysis to resolve whether Gita Green is likely to succeed on the merits of its infringement action.

### B. Plaintiff Has Not Demonstrated the Likelihood of Success on the Merits

35 U.S.C. § 102(a)(1) provides that "A person shall be entitled to a patent unless . . . the claimed invention was patented . . . before the effective filing date of the claimed invention."[13] "A determination that a patent is invalid as being anticipated under 35 U.S.C. 102 requires a finding that each and every limitation is found either expressly or inherently in a single prior art reference."[14] "[W]hile the burden of proving invalidity is with the party attacking validity, the party seeking the injunction retains the burden of showing a reasonable likelihood that the attack on the patent's validity would fail."[15] However, because an issued patent is presumed valid, both as a whole and on

---

[10] *Trebo Mfg., Inc. v. Firefly Equipment, LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014); *see Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525–26 (Fed. Cir. 2012).

[11] *Oakley Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339-40 (Fed. Cir. 2003); *See Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013).

[12] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc); *see Key Pharmaceuticals v. Hercon Laboratories Corp.*, 161 F.3d 709, 714 (Fed. Cir. 1998).

[13] *Id.*

[14] *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1375 (Fed. Cir. 2006).

[15] *Oakley*, 316 F.3d at 1339 (quotation omitted); *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001).

a claim-by-claim basis,[16] the movant need only point to the fact the patent was issued to shift the burden to the non-movant to "identify any persuasive evidence of invalidity."[17] Because "[v]ulnerability is the issue at the preliminary injunction stage," a showing of a substantial question of invalidity "requires less proof than the clear and convincing showing necessary to establish invalidity itself."[18] Neither party contests that the USPTO issued the 782 Patent, so the burden shifts and rests with WePe to identify persuasive evidence of its invalidity.

### 1. The Definition of "Member" in the 782 Patent Is Anything but Clear.

WePe seeks to discredit Gita Green's theory that "claim 1 requires that the relevant member actually define the longitudinal axis of the claimed apparatus" and a "flexible" or hose-like "member with no static axis line simply cannot" do that." Doc. 36 at 6. Gita Green insists that it is the "rigid," "longitudinal axis" that defines its claim and distinguishes it from prior art, but WePe points out that the earlier McMahon, Reining, and Fell patents on which Gita Green relies to supply this language also have these characteristics, so "there simply is no novelty to" the 782 Patent. This, WePe argues, demonstrates "a substantial question of invalidity that requires a denial" of injunctive relief. Doc. 32 at 6.

WePe also emphasizes that Gita Green's "own patent specification directly contradicts its argument" that the "member" must be "rigid" because it "contemplates that a flexible member, such as a hose, can serve as" the member. Doc. 37 at 4. "To ascertain the scope and meaning of the asserted claims, we look to the words of the claims themselves, the specification, the prosecution history, and any relevant extrinsic evidence."[19] The claim language is given the "ordinary and customary meaning . . . the term would have to a person of ordinary skill in the art in question at the

---

[16] 35 U.S.C. § 282(a).

[17] *Perdue Pharma*, 237 F.3d at 1365.

[18] *Amazon, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1359 (Fed. Cir. 2001).

[19] *Retractable Technologies, Inc. v. Becton, Dickinson and Co.*, 653 F.3d 1296, 1303 (Fed. Cir. 2011) (citation omitted).

5

time of the invention., i.e., as of the effective filing date of the patent application."[20]  Although "[i]t is entirely proper to use the specification to interpret what the patentee meant by a word or phrase in the claim," a court should not add an "extraneous limitation" from the specification to the claim, i.e., "a limitation read into a claim from the specification wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim."[21]  Instead, to construe claim language, the court should turn first to the claims themselves, then look to the specifications for guidance in interpreting the claims, and finally consider the prosecution history if in evidence.[22]  It is with these principles in mind that I consider the language of the claim.

Claim 1 begins by describing "An apparatus comprising: (a) a member having a hollow interior communicating a pressurized fluid flow and defining a longitudinal axis of said apparatus." Doc. 6-1 at 19.  The description of embodiments section states, "One essential element of the apparatus is a member having a hollow interior and adapted for communicating a flow of pressurized fluid therethrough.  The member defines a longitudinal axis of the apparatus . . . . *Although the member may be of a flexible type, such as a hose, it is presently preferred . . . to manufacture such member from a substantially rigid member*."  Doc. 6-1 at 35, ¶ 36 (emphasis added).  Nothing in this description limits the member to a rigid structure that can physically define the longitudinal axis of the apparatus.

The embodiments section of the 782 Patent contains an attempted definition of member: "in the remaining portion of this document, the member will be referred to as a first elongated rigid member."  Doc. 6-1 at 35, ¶ 36.  In theory, consistent use of the word "member" could suggest that I should construe "member" in claim 1 to incorporate the words "rigid" and "straight."  But subsequent inconsistencies in the use of "member" precludes this construction.  For example, the very next embodiments section paragraph refers to both a "member" and "the first elongated rigid member," without explanation for the distinction.  Doc. 6-1 at 35, ¶ 37.  In paragraph 38, the

---

[20] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

[21] *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988).

[22] *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996).

"member" is described only as the "first elongated member," Doc. 6-1 at 36, while paragraph 40 refers to a "first elongated member" (four times) and a "first elongated rigid member" (once). *Id.* Why "member" is defined alternatively as a "first elongated rigid member" and by various other iterations remains unclear, and this confusion leaves me unconvinced that I must construe "member" to contain the words "rigid" and "straight" as Gita Green advocates in its supplemental briefing.

Given these internal ambiguities and inconsistencies and the clear conflict between Gita Green's explanation in its briefing and the language of the patent itself, I find that it is impossible to accurately and definitively construe the word "member" in claim 1 of the 782 Patent, and I need not go further into the language of claim 1. As noted above, a construction of claim 1 is necessary to both WePe's validity challenge *and* Gita Green's infringement claim. Without a clear definition of "member," I cannot proceed to the second step of Gita Green's infringement analysis and compare the properly construed claim of the 782 Patent to WePe's allegedly infringing device.[23] Without a finding of infringement, I cannot conclude that Gita Green is likely to succeed on the merits of its infringement claim. And because the four-factor test for preliminary injunctions is conjunctive, my finding that Gita Green has not demonstrated its likelihood of success on the merits obviates my need to determine whether Gita Green could satisfy any of the three other factors.

**2.    Gita Green Has Not Otherwise Demonstrated Its Entitlement to a Tentative Construction.**

Because construction of patent claims is an issue of law,[24] courts often hold extensive pre-trial hearings—called *Markman* hearings—to ascertain the meaning of claims. In the District of Nevada, *Markman* hearings are preceded by a defined disclosure period and briefing schedule.[25] Alternatively, a district court may issue a tentative claim construction for purposes of resolving a motion for preliminary injunction.[26] This tentative construction is subject to change as the court's

---

[23] *Markman*, 52 F.3d at 976.

[24] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388 (1996).

[25] *See* Nev. L.R. 16.1-6-16.

[26] *Jack Guttman, Inc. v. Kopykae Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002).

7

1  "understanding of the technology evolves."[27]  Courts frequently proceed with preliminary injunction
2  hearings prior to a *Markman* hearing when "the claim language [is] straightforward and the parties
3  [do] not appear to dispute the meaning of the terms in any significant way."[28]  But when a critical
4  term of a disputed claim is not clear and no *Markman* hearing has been held, courts deny injunctive
5  relief because the plaintiff has not demonstrated the claim is likely to succeed on its merits.[29]
6      Plaintiff's weak showing is inadequate for even a tentative construction of claim 1 without
7  the benefit of a *Markman* hearing.  Instead of taking a shot in the dark at this nascent stage of the
8  case, the better course is to deny the motion for preliminary injunction because Gita Green has not
9  demonstrated a likelihood of success on the merits of its patent-infringement claim.

**Conclusion**

11      Accordingly, it is **HEREBY ORDERED** that Gita Green's Emergency Motion for
12  Preliminary Injunction **[Doc. 6] is DENIED**;
13      It is **FURTHER ORDERED** that WePe's Motion for Leave to File Sur-Reply **[Doc. 32] is**
14  **GRANTED IN PART** as stated herein.
15      DATED: September 16, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE

---

[27] *Id.* (citation omitted).

[28] *Kirstar Enterprises, Inc. v. Revel Environment Marketing, Inc.*, 1999 WL 66135, at *1 (N.D. Cal. Feb. 9, 1999).  *Cf. Nautilus Group, Inc. v. Icon Health and Fitness, Inc.*, 308 F. Supp. 2d 1198, 1200 (W.D. Wash. 2003) (going forward with pre-*Markman* preliminary injunction determination where the parties had "narrowed their dispute to a single claim term, and requested that the Court construe the disputed claim term and hear summary judgment on infringement at the same time as the preliminary injunction.").

[29] *See, e.g.*, *Parker-Hannifin Corp. v. Wix Filtration Corp.*, 2006 WL 3028706, at *3 (E.D. Cal. Oct. 24, 2006).