UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Gita Green, Inc., | 2:14-cv-00715-JAD-GWF |
| Plaintiff | **Claim-Construction Order** |
| v. | |
| WePe Industry, LLC., and Pete Industries LLC, | |
| Defendants | |

This is a patent-infringement case involving three entities that make and sell air-filter cleaners: Gita Green, Inc., WePe Industry, LLC, and Pete Industries LLC. Green claims that WePe and Pete are infringing its patented air-filter cleaning invention, U.S. Patent No. 8,668,782 (the '782 Patent). Green brings a single claim for patent infringement against both defendants.

Green and WePe ask me to construe four terms in the '782 patent. I provide constructions for three: "member," "closed chamber within said body," and "means for rotating said body in response to said pressurized fluid flow." But I do not construe the last term, "elongated nozzle," because a jury will know what a "nozzle" is, and the parties do not seriously dispute what this word means.

**Background**

The '782 patent describes an appliance for cleaning vehicle air filters.[1] Cars and trucks typically have air filters installed in them. These filters ensure that dust and dirt do not enter the vehicle's engine.[2] Most of us probably give little thought to the air filters in our cars—they rarely need to be changed or maintained in passenger vehicles.[3] But air filters used in bigger vehicles, like tractors or big rigs, are another matter.[4] These vehicles accumulate particulate matter much quicker

---

[1] '782 patent, col. 1, ll. 30–50.

[2] *Id.*

[3] *Id.*

[4] *Id.*

and the air filters need to be cleaned constantly—sometimes as frequently as every few days.[5]

People have created various inventions over the years to make cleaning these commercial filters easier and faster. Many of these devices (like the '782 patent) use pressurized air to clean the filter. The problem with the solutions that came before the '782 patent was that they cleaned the filter from the *outside*.[6] This was usually done by spraying pressurized air on the filter, and then manually turning the filter until its surface was clean.[7] This approach required a bulky device, it did not work for all filter sizes, and it was not very efficient.[8] The '782 patent addressed this problem by conceiving of a device that cleaned air filters from the *inside*. This allows the device to accommodate more filter sizes, and, apparently, cleans filters more efficiently.[9]

The '782 patent conceives of a simple mechanical device. The apparatus has a "hollow" "member"—some sort of hose or pipe—that runs along its length.[10] This pipe delivers pressurized air to a set of "air spraying jets."[11] The pressurized air serves two functions. First, it's used to rotate the jets.[12] Second, the pressurized air is used by the jets to clean the filter.[13] To use the apparatus you insert the jets into the filter; you then move them along the length of the interior, spraying pressurized air to clean out any particulates.[14]

---

[5] *Id.*

[6] *Id.* at col. 2, ll. 47–60.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at col. 4, ll. 16–20.

[11] *Id.* at col. 2, ll. 47–60. The specification says that air is preferable, although the patent claim describes pressurized "fluid." *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

The parties dispute the meaning of claim terms related to four components of the '782 patent:

1. *"A member."*[15]  The parties dispute whether the "member" that delivers the pressurized air must be rigid, like a pipe, or whether it can also be flexible, like a hose.

2. *"Closed chamber within said body."*[16]  The parties dispute whether the rotating air jets must be placed within a separate body inside the filter, or whether the jets can merely be placed within the air filter itself.

3. *"Elongated nozzle."*[17]  The parties dispute whether the word "nozzle" needs further construction to clarify that it controls air pressure.

4. *"Means for rotating said body in response to said pressurized fluid flow."*[18]  The parties dispute what structures the patent discloses for rotating the air jets (a means-plus-function claim).

## Discussion

**A.     Claim-construction principles**

Deciding whether a defendant has infringed a patent is a two-step process.  First, I must construe the patent's claims and "determin[e] the[ir] meaning and scope."[19]  Second, with the meaning and scope of the patent defined, the fact-finder decides whether the defendant infringed.[20]

In construing a patent's claims, I give words their ordinary and customary meaning: the meaning they would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention.[21]  "In some cases, the ordinary meaning of claim language . . . may be readily apparent even to lay judges, and claim construction in such cases involves little more than the

---

[15] *Id.* at col. 9, ll. 40–43; col. 14, ll. 35–45.

[16] *Id.* at col. 9, ll. 60–65.

[17] *Id.* at col. 9, ll. 57–60; col. 11, ll. 37–50; col. 14, ll. 49–65.

[18] *Id.* at col. 9, ll. 50–53.

[19] *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citation omitted); *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) ("[T]he court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim.").

[20] *Markman*, 52 F.3d at 979.

[21] *Id.*

application of the widely accepted meaning of commonly understood words."[22] But even if a term's meaning appears obvious, I may still be called on to construe that term. This is because when the parties dispute the scope of a claim term, it is my job—not the fact-finder's—to settle that dispute.[23] "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate . . . when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."[24]

In construing patent claims, my "claim construction analysis must begin and remain centered on the claim language itself, for that is the language that the patentee has chosen to particularly point out."[25] "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."[26] But "[o]ther claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term."[27] If I cannot determine the meaning of claim language by looking to the claim language, I may consider other sources like "the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."[28]

When a patentee describes a preferred embodiment in the specification, this embodiment may

---

[22] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

[23] *O2 Micro Int'l Ltd.*, 521 F.3d at 1362.

[24] *Id.*; *see also AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001) ("It is critical for trial courts to set forth an express construction of the material claim terms in dispute."); *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) ("[T]he district court must instruct the jury on the meanings to be attributed to all disputed terms used in the claims in suit so that the jury will be able to 'intelligently determine the questions presented.'"(citation omitted)).

[25] *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) (quotation omitted).

[26] *Phillips*, 415 F.3d at 1312–13.

[27] *Id.*

[28] *Id.*

help shed light on the meaning of the patent's claim language.[29] But these embodiments generally should not be imported into the claims as limitations.[30] "There are only two exceptions to this general rule: (1) when a patentee sets out a definition and acts as his own lexicographer, or (2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."[31]

**B.     Claim constructions**

The parties dispute four terms: (1) "a member having a hollow interior"; (2) "closed chamber disposed within said body"; (3) " elongated nozzle"; and, a means-plus-function claim, "means for rotating said body in response to said pressurized fluid flow." For the first three terms, the defendants propose specific language while Green proposes that I offer no construction. For the means-plus-function claim, the defendants propose one construction and Green proposes several.

*1.     "A member having a hollow interior" is construed to mean "a rigid or flexible member having a hollow interior."*

WePe proposes that I construe "member"[32] to mean "a rigid or flexible member having a hollow interior." Green believes this "member" must be rigid, but asks that I provide no construction and let the jury decide infringement based on the claim language as it sits.

As a preliminary note, Green suggests that the jury is capable of figuring out what a "member" is on its own, and that it is not my place to settle the parties' dispute about whether the member must be rigid. But Green misapprehends my job here. At bottom, Green and WePe dispute the scope of "elongated member"—WePe believes the term extends to both rigid and flexible materials, Green believes it extends only to rigid materials. Disputes about the scope of a claim term

---

[29] *Toshiba Corp. v. Imation Corp.,* 681 F.3d 1358, 1369 (Fed. Cir. 2012).

[30] *Id.* ("We do not read limitations from the specification into claims.").

[31] *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

[32] The disputed term appears in claims 1 and 23: "a member having a hollow interior communicating a pressurized fluid flow and defining a longitudinal axis of said apparatus," '782 patent col. 9, ll. 40–42, and "an elongated member having a hollow interior and defining a longitudinal axis of said apparatus," *id.* at col. 14, ll. 36–37.

are precisely the types of legal question I must resolve. After all, "[w]hen the parties raise an actual dispute regarding the proper scope of [the] claims, the court, not the jury, must resolve that dispute."[33]

I adopt WePe's construction for several reasons. First, the claim language itself—the best evidence of a term's meaning—indicates that the "member" can be either rigid or flexible. Claim 1 says that the invention comprises "a member having a hollow interior"; nothing about this language limits the member to a rigid one. And other claims, in contrast, describe a "*rigid* member."[34] If the patent's use of "member" means a "rigid member"—as Green suggests—there would be no reason to differentiate between the two.[35] The patentee chose to use the broad term "member," not the more narrow term of "rigid member."

Green suggests that "member" must be limited to a "rigid member" because the claims state that the member "define[s] [the] longitudinal axis" of the apparatus. But nothing in the claim language (nor any evidence or argument provided by Green) indicates that only a rigid material can "define the longitudinal axis" of something.[36] Indeed, a flexible hose within a rigid sleeve running the length of the apparatus, or a flexible hose pulled taught, would seem to meet this claim language

---

[33] *O2 Micro Int'l Ltd.*, 521 F.3d at 1362.

[34] For example, claim 21 describes "a first elongated *rigid* member." '782 patent col. 11, l. 54 (emphasis added).

[35] *Seachange Int'l, Inc. v. C-COR, Inc.,* 413 F.3d 1361, 1368 (Fed. Cir. 2005) (discussing "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope"); *see also McHugh v. Hillerich & Bradsby Co.*, No. C 07-03677 JSW, 2009 WL 890900, at *5 (N.D. Cal. Mar. 31, 2009) (noting that the fact that one of a patent's claims referred to an "elongated member" generally, and another claim referred to an "elongated member" of a certain length, indicated that the first reference was not limited).

[36] At the claim-construction hearing, Green argued that "it is difficult to define an axis when the flexible nature [of the member] can change it." But Green provides no evidence or testimony to suggest that it would be difficult for a flexible member to define an axis. Nothing about the prosecution history, the operation of the other claims, or the operation of the embodiments in the specification suggest that a rigid member is necessary to defining the longitudinal axis of the apparatus.

just as easily.[37] And Green points to nothing else in the claim language that suggests that a "member" "defin[ing] a longitudinal axis" would be understood by a person having ordinary skill in the art as a "rigid member."[38]

Second, the specification leaves little doubt that the member can be either rigid or flexible.[39] Indeed, it expressly states that "the member may be of a flexible type, such as a hose."[40] Later, the specification says that the member is only "preferabl[y]" rigid, leaving the obvious conclusion that the member could also be flexible.[41] This is compelling evidence, particularly given that "claims must be construed so as to be consistent with the specification, of which they are a part."[42]

It is true that a preferred embodiment of the invention uses a rigid member.[43] And other embodiments described in the specification might require the member to be rigid.[44] But these are

---

[37] The Federal Circuit has held that the ordinary meaning of a "longitudinal axis" is broad, requiring only "an ascertainable lengthwise direction." *Johnstown Am. Corp. v. Trinity Indus., Inc.,* 114 F.3d 1206 (Fed. Cir. 1997). A flexible hose can surely define a "lengthwise direction" of something. *See also Alltrade Tools, LLC v. Olympia Grp., Inc.,* 123 F. App'x 394, 398 (Fed. Cir. 2005) (holding that the ordinary meaning of something "defining a longitudinal axis" is merely that it be "straight," because "[a]n axis can simply be 'a line actually drawn and used as the basis of measurements' . . . or 'a main line of direction, motion, growth, or extension.'").

[38] This is particularly true given that Green concedes that "defining the longitudinal axis" means "determining or specifying" the axis—and nothing suggests that the member must be rigid to "specify" an axis. ECF No. 58 at 11. This case is easily distinguishable from cases where the claim language makes it obvious that a term must be limited to make the invention work.

[39] *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (noting that the specification is "the single best guide to the meaning of a disputed term").

[40] '782 patent col. 4, ll. 30–33.

[41] *Id.* at ll. 32–34.

[42] *Phillips*, 415 F.3d at 1316.

[43] "Preferably, such member is an elongated rigid tubular member manufactured from lightweight material, such as aluminum." '782 patent col. 4, ll. 30–33.

[44] The specification suggests that in one embodiment, a "body" might be mounted on the member. In another embodiment, the user "may simply grasp the exterior surface of the first elongated member so as to move the body" and clean the filter. Perhaps these embodiments require the member to be rigid to work—although even that is not clear.

merely embodiments of the invention—not a proper basis to limit the patent's claim language.[45] And again, Green points to nothing in the specification or prosecution history to suggest that the member should be limited to rigid materials. Absent compelling evidence that a claim's language should be limited, I cannot narrow it.[46]

I thus construe a "member having a hollow interior" to mean "a rigid or flexible member having a hollow interior."[47]

### 2.    *"Closed chamber within said body" means "a closed chamber contained inside the body mounted for rotation."*

WePe asks that I construe "closed chamber within said body" to mean "a closed chamber contained inside the body mounted for rotation"—and I do so.[48]

WePe's construction simply clarifies that the "body" containing the closed chamber refers to the "body mounted for rotation." This construction is supported by the claim language and the record. The claim language refers to the body as the "said body"—in other words, the previously

---

[45] *Toshiba Corp.,* 681 F.3d at 1369 (Fed. Cir. 2012) ("We do not read limitations from the specification into claims.").

[46] Indeed, the Federal Circuit has reiterated this rule several times in cases similar to this one. *See, e.g., Lear Corp. v. Bertrand Faure Tech. Ctr., Inc.,* 79 F. App'x 434, 437 (Fed. Cir. 2003) (holding that a"pivot axis" could not be limited to a certain fixed axis because there was "no compelling evidence that would require the ordinary and customary meaning of 'pivot axis' to be narrowed"); *Acumed LLC v. Stryker Corp.,* 483 F.3d 800, 808 (Fed. Cir. 2007) (holding that "defined on . . . an axis" was not a limiting term).

[47] Green also suggests that this construction would violate the rule of claim differentiation because "defining a longitudinal axis" would be negated if the member were flexible. *See Tandon Corp. v. U.S. Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987). But the term "defining a longitudinal axis" is not rendered superfluous if the member is flexible—the term would still set the requirement for how long the flexible member would be, namely, the length of the apparatus. Green finally argues that this construction improperly limits the patent's claim language. But it has not explained how the construction is possibly limiting. Indeed, Green admits that it plans to argue for a *more limited* meaning, namely, that the member must be rigid.

[48] This claim states that "[t]he apparatus, according to claim 1, wherein said means for rotating said body comprises: (a) a closed chamber disposed within said body and having an irregular inner surface." '782 patent col. 9, ll. 60–64.

defined "body."[49] And the only "body" discussed in the preceding claim language is the "body mounted for rotation" mentioned in claim one.[50]

The specification supports this interpretation, explaining that the closed chamber is situated within the "hollow interior" of the rotating body.[51] And during prosecution, the patentee argued that the '782 patent was distinguishable from the prior art because it included a "claimed internal chamber" within the body.[52] In short, everything points to WePe's proposed construction.

Notably, Green does not seriously dispute WePe's construction. At the claim-construction hearing, Green said that it believed WePe's proposal was a "synonym" and that Green did not "disagree with it."[53] Green conceded that the "plain and ordinary meaning" of this term was that the chamber was located inside the rotating body.[54] Green contends that the jury could be confused by WePe's construction but offers no coherent reason why.

I thus construe "closed chamber within said body" to mean "a closed chamber contained inside the body mounted for rotation."

### 3. *"Elongated nozzle" requires no construction*.

WePe proposes that I construe "elongated nozzle" to mean "a tubelike device, usually streamlined, for accelerating and directing a fluid, whose pressure decreases as it leaves the nozzle." Green contends that this term needs no construction, and I agree.

Where a patent's language is "readily apparent even to lay judges" like me,[55] added constructions can do more harm than good. Courts need not construe every term with an "ordinary

---

[49] *Id.*

[50] *Id.* at ll. 44.

[51] *Id.* at col.5, ll. 20–35.

[52] ECF No. 56, ex. B at 21–22.

[53] ECF No. 72 at 35.

[54] *Id.*

[55] *Phillips,* 415 F.3d at 1314.

meaning, lest [they] be inundated with requests to parse the meaning of every word in the asserted claims."[56]

Here, "nozzle" is a familiar word with which I and any jury will be familiar. WePe's nineteen-word construction will likely create more confusion than clarity. And the parties have not articulated any real dispute about what this term means.[57] Where there is no genuine dispute, it is often "proper for the district court not to construe" a term.[58] And WePe's only basis for this construction is extrinsic evidence, which is not preferred—and the intrinsic evidence does not suggest any special meaning attributed to the word "nozzle." The claim language, specification, and prosecution history all simply use the term generally without any explanation.

Thus, no construction is needed for "elongated nozzle."

### 4. *"Means for rotating said body in response to said pressurized fluid flow" includes the various structures described in the patent specification*.

The parties agree that this claim term is a means-plus-function one. Means-plus-function terms allow the patentee to claim a "means" (a structure or method) for carrying out a function, without including in the claim language the specifics about precisely how it's done.[59] Unlike other patent claims, means-plus-function claims are *limited* by the specification. I must construe the "means" to include only the "corresponding structure, material or acts described in the patent specification" and their "equivalents."[60] If the patent's specification does not link a given structure (a way of doing something) to the relevant function, that structure cannot be part of the patentee's

---

[56] *O2 Micro,* 521 F.3d at 1360; *see also Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341, 1349 (Fed. Cir. 2001) (finding no error in decision not to construe "melting").

[57] Even WePe's counsel conceded at the hearing that its elongated nozzle construction was "the least important" and raised only so that possible future disputes could be avoided. ECF No. 72 at 31–32.

[58] *Silicon Graphics, Inc. v. ATI Techs., Inc.,* 607 F.3d 784, 798 (Fed. Cir. 2010).

[59] *Serrano v. Telular Corp.*, 111 F.3d 1578, 1583 (Fed. Cir. 1997).

[60] 35 U.S.C. § 112.

1  claims.[61]

2  The parties agree that the claimed function of this term is: "rotating said body in response to
3  said pressurized fluid flow"—in other words, rotating the filter cleaner using pressurized air. But
4  they disagree about which structures the patentee discloses in the specification. Green argues that
5  the patent sufficiently discloses several structures used by prior-art inventions to rotate a filter
6  cleaner, and that these structures should count as alternatives for purposes of the means-plus-
7  function claim. WePe counters that simply mentioning structures used by the prior art is not enough.
8  It apparently believes that to properly disclose a means, the patentee must explicitly state that a given
9  structure can be used in the patentee's own invention.[62]

10  But the Federal Circuit has been clear on this point: A patentee can disclose structures for
11  purposes of means-plus-function claims by referring to structures used in the prior art.[63] After all, it
12  is common for patentees to use well-known components as part of a novel invention.[64]

13  The exception is where the patent specification suggests that a prior-art structure is *incapable*
14  of functioning in the patentee's invention.[65] For example, in *Clearstream v. Hydro-Action,* a patent
15  for a wastewater-treatment invention disclosed two structures for a means of "injecting air into waste
16  water."[66] Like the '782 patent, one of these structures was disclosed in the patent's background
17  discussion of the prior art. The district court held that the means disclosed in the prior art could not
18  be a corresponding structure—particularly given that the patent suggested that the prior-art structure
19  had some disadvantages relative to the patentee's invention.

---

[61] *Serrano*, 111 F.3d at 1583.

[62] WePe does not appear to dispute that the patent provides enough detail about the prior-art structures. It states in its briefing that the '782 patent discloses "other structures in prior devices that can generally perform the same function." WePe instead relies on the misapprehension that prior-art structures cannot form the basis of a means-plus-function disclosure.

[63] *Clearstream Wastewater Sys., Inc. v. Hydro-Action, Inc.*, 206 F.3d 1440, 1445 (Fed. Cir. 2000).

[64] *Id.*

[65] *Id.*

[66] *Id.*

The Federal Circuit reversed, holding that the prior-art structure was properly disclosed.[67] The court focused on the fact that nothing in the patent's description suggested that the prior-art structure was *incapable* of working within the patentee's invention. This distinguished cases where the patent's description suggested that a prior art structure would simply not work.[68]

Nothing in the '782 patent or its prosecution history suggests that the structures used by the prior art to rotate the filter cleaner are incapable of functioning in the patentee's invention. Indeed, this case is easier than *Clearstream*: the '782 patent does not even suggest that the prior art structures have any disadvantages when it comes to rotating the cleaner.[69] Presumably, a person having ordinary skill in the art would just as likely use the prior-art means as the patentee's new means.

WePe also argues that the '782 patent does not sufficiently link the prior-art structures with the relevant function. But it does. In describing the *Fell* prior art, for example, the '782 patent identifies the structure—a "pipe means" with a "pair of nozzles directed at an angle"—and then links that structure up with the rotating function: "provid[ing] a rotary movement to the pipe means . . . operated from air compressors."[70] Similarly, the '782 patent explicitly links the other prior-art structures to the function of rotating the cleaning device in response to air pressure.[71] WePe provides no authority to suggest that the patentee must link a structure with its *own invention*. All the law requires is that the patentee disclose the structure and link it to the relevant function. And the '782 patent's discussion of the prior art does just that.[72]

---

[67] *Id.*

[68] *Id.*

[69] The '782 patent never discusses the advantages of the means it discloses for rotating the jets, which involve a series of "baffles" and "orifices." '782 patent, col. 5, ll. 63–66.

[70] '782 patent, col. 2, ll. 10–20.

[71] *Id.* at col. 2, ll. 17–20, 30–34, 39–41, and 49–51.

[72] WePe argues that it is unfair for the '782 patent to includes structures from the prior art that, at the same time, the patent suggests are inferior. But the Federal Circuit rejected this argument in *Clearstream*. Moreover, the '782 patent's improvements have nothing to do with the means for rotating the cleaning jets. Instead, the improvements relate to the invention's ability to clean filters

I thus construe "means for rotating said body in response to said pressurized fluid flow" to include the corresponding structures disclosed in the '782 patent's specification, including the prior-art structures disclosed in the specification's background.[73]

### 5. *Undisputed constructions*

The parties submitted agreed-upon constructions for six claim terms. I adopt each of these:

    a.    "Tubular air filter" means "an air filter having a tubular, sleeve-like shape with a hollow interior";

    b.    "bend" is given its plain and ordinary meaning;

    c.    "body mounted for rotation" is given its plain and ordinary meaning;

    d.    "a second member having a hollow interior" is given its plain and ordinary meaning;

    e.    "body is mounted for said rotation on a peripheral surface of said second member" is given its plain and ordinary meaning;

    f.    "defining a longitudinal axis of said apparatus" means "determining or specifying the long axis of the apparatus."

### Conclusion

Accordingly, IT IS HEREBY ORDERED that I adopt the above constructions.

IT IS FURTHER ORDERED that this case is referred to a magistrate judge for a settlement conference under LR 16.2-19.

Dated September 16, 2016

                                        _____
                                        Jennifer A. Dorsey
                                        United States District Judge

---

from the inside. *See* ECF no. 56, ex. B at 21–22.

[73] This includes the prior art structures described in the '782 patent in column 2, lines 17–20, 30–34, 39–41, and 49–51. And the structures that WePe does not dispute, which include the structures described in column 5, lines 29–32, 63–66; in column 10, line 8; in column 11, line 53; in column 14, line 9; and in column 14, lines 36–67.